**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 07-342 (DAR)** |
| **CESAR ISABEL,** | : | |
| **JONATHAN GARCIA, and** | : | |
| **MIGUELA CONCEPCION** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**GOVERNMENT'S MOTION TO QUASH SUBPOENA SERVED ON METROPOLITAN POLICE DEPARTMENT ("MPD") SEEKING THE NARCOTICS SEIZED IN THIS CASE**[1]

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court for an Order quashing the subpoena that was issued by the defendants to MPD or its authorized representatives seeking the narcotics actually seized in connection with the cocaine distribution investigation involving the defendants. The subpoena served on the MPD seeks to compel the production of evidence within the possession of MPD that is not discoverable under Federal Rule of Criminal Procedure 16, nor is it relevant for purposes of the preliminary/detention hearing. Accordingly, the subpoena should be quashed as the

[1] The government is filing this motion after the close of business on Friday, July 13, 2007 because it was not able to receive a copy of the subpoena served on MPD until 4:30 p.m. on Friday. On Monday, July 9, 2007 the undersigned Assistant United States Attorney ("AUSA") provided all three defense counsel with the property control number for the narcotics at issue so that they could serve a subpoena for the narcotics on MPD for the continued preliminary/detention hearing scheduled for Monday, July 16, 2007. On Thursday, July 12, 2007 the undersigned AUSA asked defense counsel Mary Manning Petras during a telephone conversation whether the defense had issued a subpoena to MPD for the narcotics at issue. When Ms. Petras asked the undersigned AUSA why he needed to know, the undersigned AUSA explained that if the defense had served MPD with a subpoena for the narcotics at issue then the government intended to file a motion to quash that subpoena. Ms. Petras then indicated that the subpoena was with her investigator and that she would not provide the government with a courtesy copy. The undersigned AUSA left voicemail messages with Ms. Petras' co-counsel, Messrs. Joseph Conte and Joseph Virgilio, in this case on Thursday and Friday. On Friday evening, Mr. Virgilio advised the undersigned AUSA that he believed that Ms. Petras had served a subpoena on MPD, but that he was not sure and did not have a copy of the subpoena.

fruit of an abuse of the Court's legal process. As grounds for this motion, the United States offers the following.

**ARGUMENTS AND AUTHORITIES**

1. Defendants Jonathan Garcia, Cesar Isabel, and Miguela Concepcion are charged by complaint with possession with intent to distribute cocaine.

2. The defendants were arrested on July 5, 2007. They were presented before this Court on the charge in the complaint on July 6, 2007. The government requested that the defendants be held pursuant to 18 U.S.C. 3142 (f)(1)(C), and a preliminary/detention hearing was scheduled for Monday, July 9, 2007 at 9:30 a.m.

3. At the preliminary hearing the government called Officer Harry Allen as a witness. Officer Allen testified that on July 4, 2007 a confidential informant ("CI") had advised him that he had received a sample of cocaine from defendant Isabel on July 4, 2007, and that the CI and defendant Isabel, defendant Concepcion, defendant Garcia made arrangements to meet the next day so that the CI could purchase 3 kilograms of cocaine from them for approximately $70,000. The CI brought the cocaine sample to MPD's Narcotics and Special Investigations Division offices where Officer Allen took custody of the sample, field tested it and then placed it into evidence at MPD. The field test indicated that the sample brought by the CI was cocaine.

4. On the morning of July 5, 2007 the CI was outfitted by MPD with a small audio recording device and then met with all three defendants at the McDonalds located and New Hampshire Avenue and University Boulevard in Langley Park, Maryland. This meeting was audio recorded, and parts of the meeting were video recorded and observed by MPD officers. After that initial meeting, the three defendants indicated to the CI that

they would meet him in approximately one hour at the parking lot of the Safeway grocery store located at Piney Branch Road and Georgia Avenue, NW, in Washington, DC where the defendants were to sell 3 kilograms of cocaine to the CI.

5. At approximately 2:20 p.m. on July 5, 2007 the defendants and the CI met at the Shell Gas Station located across the street from the Safeway at Piney Branch and Georgia Avenue, NW. The CI then met with all three of the defendants in a burgundy Ford Taurus being driven by defendant Concepcion. The CI sat in the front passenger seat while defendants Isabel and Garcia sat in the back seat. Defendant Concepcion then told defendant Garcia to show the CI "the stuff", at which point defendant Garcia took three brick shaped and sized packages wrapped in brown tape out of a shoe box, sliced a small hole in the middle of each package, and then passed each package up to the CI. The incision made in each package revealed a white powder substance inside of each brick. At this point the CI called members of the NSID arrest team, who then moved in to arrest the three defendants. Defendants Isabel and Garcia attempted to flee, and defendant Garcia remained in the car. All three defendants were eventually arrested and identified.

6. After the three defendants were arrested MPD seized the 3 brick shaped packages were as evidence. The a portion of the white powder inside each of the 3 brick shaped packages was field tested, and all 3 bricks field tested positive for the presence of cocaine. The drugs were then placed in a heat seal evidence bag to be submitted to the DEA for analysis.

7. Officer Allen testified during cross examination as to statements made by each of the defendants. Officer Allen testified that Defendant Isabel gave a statement in

which he corroborated basically everything that Officer Allen observed and what the CI relayed to Officer Allen about their meetings. Defendant Isabel further stated that after the three defendants left the CI at the McDonalds in Langley Park, they drove to an unknown location in Maryland. It was there that, according to defendant Isabel, defendants Garcia and Concepcion went inside of a house and prepared the three packages of cocaine to sell to the CI. Defendant Isabel stated that he did not go into the house with the other two defendants, but instead stayed outside the house in the parked car. Officer Allen testified that defendant Isabel further stated that he did not observe defendants Garcia and Concepcion put together the packages, that he did not know what was in the packages, but that they were nevertheless not cocaine.

8. Officer Allen also testified on cross-examination that defendant Garcia asked Officer Allen what would happen if only half of the substance in the packages was cocaine.

9. Finally, Officer Allen testified on cross examination that defendant Concepcion told Officer Allen that he doesn't sell cocaine, but that instead he prefers to rob people. Officer Allen also testified that another officer heard defendant Concepcion telling defendant Garcia in the MPD cell block "don't snitch, you know what happens to snitches," when defendant Garcia was being taken up to be interviewed by MPD.

10. The defendants are now attempting to subpoena the narcotics seized from the defendants on July 5, 2007 to present the narcotics as evidence in the preliminary hearing. For what purpose, it is not clear as there has been no evidence or proffer presented during the preliminary/detention hearing that the three bricks seized from the defendants are anything other than cocaine. Indeed, the testimony solicited during cross

examination from Officer Harry Allen was that defendant Garcia, one of the two defendants who actually put the packages together, asked Officer Allen what would happen to him if the bricks were made up of half cocaine. Defendant Isabel admitted that he was not present with defendants Garcia and Concepcion when he stated that they went into an unknown location to put together the cocaine bricks. Defendant Isabel's statements to Officer Allen that the narcotics were not real have, based on his own admission, no basis in fact. Defendant Concepcion only stated that the substance had to be analyzed, and when he observed defendant Garcia being removed from the cell block to be interviewed, advised defendant Garcia not to snitch because defendant Garcia knows what happens to snitches. What would there be to snitch about if the narcotics seized from the defendants were not real?

11. The purpose of a preliminary/detention hearing is "to determine whether there is probable cause to believe that an offense has been committed and that the arrested person committed it." 18 U.S.C 3060. The Supreme Court stated in Barber v. Page, 390 U.S. 719, 725 (1968) that "a preliminary hearing is ordinarily a much less searching exploration than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." In this case, there has been an abundance of evidence indicating that probable cause exists that the defendants possessed cocaine with intent to distribute, including a field test of the narcotics seized from the defendants that indicated that the substance is cocaine. See Smith v. United States, 254 F.2d 751, 754 (D.C. Cir. 1958) (holding that positive result of preliminary field test performed on suspected narcotics was enough for arrest). See also United States v. Coleman, 149 F.3d 674 (7th Cir. 1998) (positive field test for cocaine

along with information provided by confidential informant enough to support probable cause for search warrant); United States v. Wood, 545 F.2d 1124 (8th Cir. 1976) (positive result of preliminary field test indicating that suspected narcotic was cocaine was enough to establish probable cause for arrest and search of car).

12. Moreover, the quantity of cocaine underlying the offense charged is not an element of that charged offense. See United States v. Jindau, 98 F.3d 239, 247 (6th Cir. 1996). Instead, the amount of the controlled substance typically becomes relevant only at the penalty phase. United States v. Campbell, 61 F.3d 976, 9979-80 (1st Cir. 1995). Therefore, whether the narcotics seized from the defendants is almost 3 kilograms of cocaine or a lesser amount, that question only becomes relevant when determining the defendants sentencing, and not as to probable cause.

13. A defendant "may lay claim to the benefit of only so much discovery as may become incidental as to a properly conducted inquiry into probably cause." Coleman v. Barnett, 477 F.2d 1187, 1199 (D.C. Cir. 1973). "Any broadening of the defendant's rights to discovery in criminal cases should more properly be left to the provisions of Rule 16, Federal Rules of Criminal Procedure, which deal specifically with this problem." United States v. Bates, 287 F.Supp. 657, 660 (E.D. Tenn. 1968). Magistrate Judges presiding over preliminary hearings "are endowed with broad powers to supervise examination of witnesses" and the introduction of evidence. Coleman, 477 F.2d at 1202.

14. The requested narcotics evidence is not discoverable under Rule 16 and is, in fact, exempted from discovery under Rule 16 (a)(1)(E). Subsection (a)(1)(E) of the rule specifically provides, "[u]pon a defendant's request, the government must permit the

defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. The mere fact that the defendants may have subpoenaed this evidence from the MPD does not make it discoverable. It is a defendant's burden to make a prima facie showing that evidence sought under Rule 16(a)(1)(E) are material to preparing the defense. United States v. McGuinness, 764 F. Supp. 888, 894 (S.D. N.Y. 1991). "To establish a showing of materiality, a defendant must offer more than the conclusory allegation that the requested evidence is material." United States v. Ashley, 905 F. Supp. 1146, 1168 (E.D. N.Y.1995) (internal quotations omitted).

15. Federal Rule of Criminal Procedure 17(c) does permit the Court, on a highly specific showing, to permit return of a subpoena served on a third party to produce evidence already in the government's possession before trial. This rule, however, "was not intended to provide a means of discovery in criminal cases," United States v. Nixon, 418 U.S. 683, 698 (1974), and, accordingly, is applicable only in exceptional cases. United States v. Ferguson, 37 F.R.D. 6, 7-8 (D. D.C. 1965). This Court has the power, however, under Rule 17(c)(2) to quash a subpoena if it is "unreasonable or oppressive."

16. The defendants cannot meet their burden. The defendants do not know what know what the inspection or examination of the narcotics evidence will yield and thus they cannot meet the test of materiality. At best, the defendants can proffer conclusory allegations of materiality with respect to what the examination will yield. But

conclusory allegations of materiality fail to suffice. Ashley, supra, 905 F. Supp. 1146 at 1168. Authorizing defendants' Subpoena would thus constitute an impermissible fishing expedition. And such an abuse of this Court's subpoena power is not warranted.

17. Although the defendants have a Sixth Amendment right to compel witnesses and testimony on his behalf, that right does not entitle the defendant to ignore the Rules of Criminal Procedure and of Evidence. See generally Ready v. United States, 445 A.2d 982, 990 (D.C. 1982). Accordingly, the government moves that any subpoena be quashed consistent with the Federal Rules of Criminal Procedure and the Court's inherent power to safeguard the proper use of its own process.

WHEREFORE, the government respectfully requests that the Court quash the subpoena served on the MPD seeking the inspection and examination of the narcotics in this case.

Respectfully submitted,
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498-610

By: _____/s/__________________
LOUIS RAMOS
Assistant United States Attorney
Bar No. 472-176
555 4th Street, N.W., Room 4243
Washington, DC 20530
(202) 305-2195

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 07-342 (DAR)** |
| **CESAR ISABEL,** | : | |
| **JONATHAN GARCIA, and** | : | |
| **MIGUELA CONCEPCION** | : | |
| | : | |
| **Defendants** | : | |
| ______________________________ | : | |

**O R D E R**

Upon consideration of the government's motion to quash the subpoena served on the Metropolitan Police Department seeking the narcotics in this case, the Court finds that the subpoena is inappropriate and shall be quashed and it is hereby,

**ORDERED** this _____ day of July, 2007 that the government's motion is **GRANTED**.

______________________________
Deborah A. Robinson
United States Magistrate Judge

____________
Date

Copies to:
AUSA Aaron Mendelsohn
AFPD Mary Manning Petras
Joseph Conte, Esq.
Joseph Virgilio, Esq.